UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BCRS1 LLC | |
| Plaintiff, | Civil Action No. |
| v. | |
| JACOB UNGER AND KARL CAMOTA, | **COMPLAINT** |
| Defendants. | |

Plaintiff BCRS1 LLC ("BCRS1"), by its undersigned counsel, for its complaint against defendant alleges as follows:

## JURISDICTION AND VENUE

1.     This civil action arises under Sections 1030 *et seq.* of the Computer Fraud and Abuse Act ("CFAA", or the "Act"), 18 U.S.C. § 1030 *et seq.;* jurisdiction is founded on the existence of questions pleaded herein under the Act.

2.     As detailed below, defendants unlawfully accessed one or more protected computers and damaged plaintiff in excess of $5,000 during a one-year period.  Therefore, this action may be brought pursuant to the CFAA, 18 U.S.C. § 1030(g) and 18 U.S.C. § 1030(c)(4)(A)(i)(I).

3.     Venue is proper in this District pursuant to 27 U.S.C. §1391(b), in that it is a judicial district in which defendant Jacob Unger ("Unger") resides and pursuant to 27 U.S.C. §1391(c) in that Karl Camota ("Camota") is not a resident of the United States and resides in Ontario, Canada.

4.     This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. Section 1367(a).

022936}

## PARTIES

5.     Plaintiff is a limited liability company duly organized and existing under the laws of the State of New Jersey, and maintains its principal place of business at 12 Stamford Hill Road, Lakewood, New Jersey 08701.

6.     Defendant Jacob Unger is a natural person, residing in Kings County and State of New York.

7.     Defendant Karl Camota is a natural person, residing in Ontario, Canada.

## BACKGROUND

**The Agreement**

8.     Plaintiff is an established operator that provides technical computer services to over the counter cryptocurrency traders.

9.     In or about February 2020, Plaintiff entered into an agreement (the "Agreement") with Novera Capital, Inc. ("Novera") whereby Novera would develop a computer program which is an electronic trading platform for *inter alia* "Over the Counter" cryptocurrency traders (the "Web Site Platform").

10.     Novera is a corporation organized in the Province of Ontario, Canada.

11.     At all relevant times, defendant Unger was the Chief Executive Officer of Novera and a shareholder of Novera.

12.     The Agreement provided for Novera to develop a Web Site Platform for plaintiff pursuant to the specifications to be provided by plaintiff.

13.     The Web Site Platform was intended to replace the current website platform used by plaintiff's customers and generate income for plaintiff and its customers.

14.     The Web Site Platform was to provide an easy-to-purchase platform for the purchase of cryptocurrencies and other financial transactions.

15.      The Web Site Platform was also required to record all transactions and provide backend accounting services.

16.     The Web Site Platform was to be developed exclusively for plaintiff and plaintiff retained ownership of all code, computer software, trade secrets and information used for the Web Site Platform.

17.     The Web Site Platform was to be developed and stored on plaintiff's protected computer server ("Plaintiff's Protected Computer Server").

18.     Unger represented to plaintiff that the cost of the Web Site Platform is $75,000.00 and would be completed within three months by June 2020.

19.     Unger represented that at that time Novera had no other customer projects and that Novera would dedicate practically all of its resources to timely develop the Web Site Platform.

20.     Unger also represented that at that time Novera had no other sales and income and that plaintiff's payments was needed by Novera for its payroll.

21.     Unger represented that Novera would utilize the $75,000 total payments to pay Novera's employees' payroll during the three-month development process and that Novera's software engineers and project manager would dedicate all their time and efforts to create the Web Site Platform.

22.     Plaintiff remitted full payment to Novera.

**Defendant's Scheme**

23.     Defendant represented that he and Novera were developing the Web Site Platform on behalf of plaintiff.

24.     The Web Site Platform and all associated intellectual property were to be placed on Plaintiff's Protected Computer Server.

25.      The Web Site Platform and all associated intellectual property were the property of plaintiff.

26.     In or about March 2020, defendant represented to plaintiff that he and Novera required full access to Plaintiff's Protected Computer Server in order to develop and make operational the Web Site Platform.

27.     Novera was entrusted with, was directed to, and was responsible for development and supervision of plaintiff's Web Site Platform.

28.     Novera failed to deliver or complete the Web Site Platform.

29.     In March 2020 through May 2020, the Web Site Platform was being developed by Novera and its employees included defendant Camota.

30.     Unger represented that the Web Site Platform required additional work and that Novera would continue to work on the Web Site Platform and that it was Novera's sole project.

31.     In or about June 15, 2020, Novera "delivered" to plaintiff a "beta" (draft) version of the Web Site Platform (the "Beta Version").

32.     At that time, Unger represented that the Web Site Platform was not complete and that the Beta Version was not usable on a commercial public web site.

33.     At about that time, Unger expressed to plaintiff that the Web Site Platform and significant parts thereof, could be used for other projects envisioned by Unger for Novera.

34.     Unger admitted that the Web Site Platform and all its Intellectual Property, including computer code, programing, methods, and structure, were plaintiff's property (collectively "Plaintiff's IP").

35.     Unger desired to enter into an agreement with plaintiff for the use of Plaintiff's IP.

36.     Plaintiff did not agree to enter into an agreement with plaintiff for the use of Plaintiff's IP.

37.     Unbeknownst then to plaintiff, Unger began and continued a pattern of fraud, delay, and deceit in order to extort funds from plaintiff and convert Plaintiff's IP.

38.     Upon information and belief, although Unger continuously represented that the Web Site Platform would be completed in June 2020 and all of Novera's technical staff would be working to complete the Web Site Platform, unbeknownst to plaintiff, Unger directed Novera's employees to delay and not to complete the Web Site Platform.

39.     In or about, June 2020, Unger tried to extort more funds from plaintiff by claiming that Novera needed additional time and money from plaintiff in order to complete the Web Site Platform.

40.     At about the same time, Unger began pressuring plaintiff to relinquish sole ownership of Web Site Platform and Plaintiff's IP.

41.     At that time and continuing through August, Unger continued to extort plaintiff.

42.     Unger threatened plaintiff that he would direct Novera's employees not to complete the Web Site Platform unless plaintiff paid additional funds and agreed to share Plaintiff's IP.

43.     Unger also stated that he was directing Novera's employees to use part of Plaintiff's IP to develop a "Back End Platform" to sell to Novera's customers.

44.     Unger knew that plaintiff and its customer were relying on the Web Site Platform to continue their businesses and plaintiff intended to replace its customer's current website with the Web Site Platform.

45.     Unger also knew that plaintiff's customer's contract for its current web site technology would expire on September 1, 2020 and time was of the essence.

46.     Unger knew that by delaying and refusing to complete the Web Site Platform, he was putting plaintiff and its customer in financial jeopardy

47.     To date, Unger and Novara have not delivered a commercially reasonable Web Site Platform.

48.     The Web Site Platform does not work and cannot be used as a secure web site platform.

**Defendants' Theft and Violation of the Computer Fraud and Abuse Act**

49.     Plaintiff is the sole owner of the Web Site Platform and Plaintiff's IP.  Which includes the electronic trading platform, together with the associated programming code, structure, and trade secrets.

50.     In or about June 2020, when Novera failed to deliver an operational Web Site Platform, the relationship between plaintiff, Unger and Novera deteriorated.

51.     Since in or about June 2020, plaintiff refused to enter into an agreement for Unger and Novera to share Plaintiff's IP.

52.     Unger acknowledged plaintiff's ownership of Plaintiff's IP.

53.     Prior to August 26, 2020, plaintiff advised Unger that he would not agree to share Plaintiff's IP with Unger and Novera and that they were in breach of their obligations to plaintiff.

54.     Also, at to about that time, plaintiff advised Unger that it would seek to have the Web Site Platform completed by other developers.

55.     Unger continued to attempt to extort funds from plaintiff and the use of Plaintiff's IP.

56.     On or about, September 3, 2020, Plaintiff's server recorded that defendant Camota accessed plaintiff's server which hosted the Web Site Platform and Plaintiff's IP ("Plaintiff's Server").

57.     At that time, the relationship between plaintiff, Novera and Unger had ceased.

58.     Plaintiff's IP including the Web Site Platform, the code repository, logins, passwords, and other confidential information are, and were known to defendants to be, confidential information and knowledge.

59.     Plaintiff's IP was located on plaintiff's server.

60.     At all relevant times, defendant Camota was located in Canada.

61.     Defendants were not authorized to access Plaintiff's Server.

62.     Unger knew that defendants were not authorized to access Plaintiff's Server.

63.     Upon information and belief, based on Unger's prior conduct and threats, Unger directly or indirectly tampered with Plaintiff's Server and (i) copied Plaintiff's IP; (ii) deleted part of Plaintiff's IP; and (iii) rendered plaintiff's Web Site Platform unusable (collectively "Protected Server Hacking").

64.     Upon information and belief, based on Unger's prior conduct and threats, Unger directed Camota to access and tamper with Plaintiff's Server to (i) copy Plaintiff's IP; (ii) delete part of Plaintiff's IP; and (iii) render plaintiff's Web Site Platform unusable.

65.     Camota knew at that time that any prior relationship with plaintiff had ceased.

66.     Camota knew at that time he was not authorized to access Plaintiff's Server.

67.     Unger and Camota knowingly, maliciously, and unlawfully engaged in Defendants' Protected Server Hacking.

68. Unger and Camota knowingly, maliciously, and unlawfully conspired to engage in Defendants' Protected Server Hacking. Additionally, upon information and belief, on or about September 2, 2020, defendants directly or indirectly, without authorization from plaintiff or its customer, accessed the protected computers used by the web site's domain name registrar and web hosting service, and disabled certain access to plaintiff's customer's website ("Disabling of Website") .

69. Defendants' conduct affected protected computers used in and affecting interstate and foreign commerce.

70. Defendants' knew that their conduct affected protected computers used in and affecting interstate and foreign commerce.

71. As a direct result of defendants' actions including Disabling of Website, plaintiff cannot license or sell the Web Site Platform and consumers cannot access or purchase cryptocurrency from plaintiff's customers and licensees.

72. Plaintiff has been damaged by defendants' unlawful and malicious conduct in excess of $5,000 during a one year period and this action may be brought pursuant to the CFAA 18 U.S.C. § 1030(g) and 18 U.S.C. § 1030(c)(4)(A)(i)(I).

**FIRST CLAIM FOR RELIEF**
**Violation of Computer Fraud and Abuse Act "(CFAA")**
**And Conspiracy to Violate the CFAA**
**18 USC 1030(a)(2)(C); (a)(4); (a)(5); (a)(7); (b); and (g)**

73. Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 69 above as if fully set forth herein.

74. As detailed above, defendants intentionally and unlawfully accessed Plaintiff's Protected Computer Server other protected computers.

75.     As detailed above, defendants intentionally and unlawfully engaged in Plaintiff's Protected Computer Server Hacking, including without limitation, defendants' (i) copied Plaintiff's IP; (ii) deleted part of Plaintiff's IP; and (iii) rendered plaintiff's Web Site Platform unusable.

76.     As detailed above, defendants intentionally and unlawfully engaged in Disabling of Website.

77.     As detailed above, defendants intentionally and unlawfully conspired to engage in Protected Server Hacking, including without limitation, defendants' (i) copied Plaintiff's IP; (ii) deleted part of Plaintiff's IP; and (iii) rendered plaintiff's Web Site Platform unusable.

78.     As a direct and proximate result of defendants' unlawful conduct as set forth above, plaintiff's business has been irreparably harmed, and continues to suffer irreparable harm.

79.     As a result of the forgoing conduct by defendants, upon information and belief, plaintiff was damaged and continues to be damaged in excess of $500,000, the exact amount to be determined at trial.

80.     Defendants conduct was malicious, shocking to the conscience.  Therefore, defendants should also be held liable for punitive damages to prevent them and others similarly inclined from repeating such tortuous conduct in the future, in the sum of at least $500,000 million, the precise amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Conversion)

81.     Plaintiff repeats and realleges each of the allegations set forth in paragraphs 1 through 81 above as if fully set forth herein.

82.     Defendants have wrongfully exercised dominion and control over Plaintiff's Protected Computer Server, Plaintiff's IP including the Web Site Platform, which property belongs to plaintiff.

83.     Defendants have wrongfully failed to return plaintiff's property.

84.     As a direct and proximate cause of defendants' tortuous acts, plaintiff has sustained injury.

85.     Unger acted maliciously and willfully, with the intent to injure plaintiff.

86.     As a direct and proximate result of Unger's unlawful conduct, plaintiff has been damaged in excess of $500,000 the precise amount to be determined at trial.

87.     Defendants acted maliciously and should also be held liable for punitive damages to prevent it and others similarly inclined from repeating such tortuous conduct in the future, in the sum of at least $500,000

## **RELIEF REQUESTED**

**WHEREFORE**, plaintiff demands judgment in its favor and against defendant as follows:

A.      awarding compensatory damages in an amount in excess of $500,000, the precise amount to be determined at trial;

B.      awarding punitive damages in an amount to be in excess of $500,000;

C.      preliminarily and permanently:

   a.   compelling defendants to return to plaintiff all confidential or proprietary information and all property that is in its possession and which belongs to plaintiff;

   b.   enjoining defendants from taking any further actions to interfere with plaintiff;

D.      awarding plaintiff its costs and disbursements of this action, including attorneys fees; and

E.    awarding plaintiff such other and further relief as this court may deem just, proper, and

necessary.

Plaintiff demands a jury on all issues so triable.

Dated: September 8, 2020
      New York, New York

LAW OFFICE OF JEFFREY FLEISCHMANN PC
By: /s/Jeffrey Fleischmann
Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiff*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com