UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                   :
  BCRS1, LLC,                                      :
                                                   :     **MEMORANDUM DECISION**
                              Plaintiff,           :     **AND ORDER**
                                                   :
              - against -                          :     20-cv-4246 (BMC)
                                                   :
  JACOB UNGER,                                     :
                                                   :
                              Defendant.           :
                                                   :
---------------------------------------------------------- X

**COGAN**, District Judge.

Plaintiff BCRS1, LLC, is a 21st-century business that claims to be the victim of a very 21st-century crime. It began when plaintiff wanted to develop an online platform for cryptocurrency trading. Plaintiff contracted with Novera Capital, Inc., a Canadian corporation, to build the platform. But the deal collapsed, and plaintiff alleges that Novera's CEO, defendant Jacob Unger, hacked into plaintiff's server, deleted plaintiff's intellectual property, and rendered plaintiff's website unusable. Plaintiff brought claims for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and for conversion under New York law.

Defendant seeks dismissal on four grounds. He argues that plaintiff has failed to state a claim under the CFAA, that Novera must be joined under Federal Rule of Civil Procedure 19, that the suit belongs in Canada under the doctrine of *forum non conveniens*, and that plaintiff's conversion claim is not cognizable under New York law. Although the first three points do not warrant dismissal, the allegations supporting the conversion claim are too vague to state a claim. Therefore, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff describes itself as "an established operator that provides technical computer services to over[-]the[-]counter cryptocurrency traders."[1]  Before the alleged hacking, plaintiff operated a website, but plaintiff wanted to replace it with a more user-friendly platform for cryptocurrency trading (the "platform").  It thus hired Novera.

Under the contract, Novera was to develop the platform on plaintiff's server, pursuant to plaintiff's specifications.  The platform would facilitate financial transactions, record those transactions, and provide certain accounting services.  It "was to be developed exclusively for plaintiff," and plaintiff "retained ownership of all code, computer software, trade secrets and information" for the program.  Defendant assured plaintiff that Novera would "dedicate practically all of its resources" to the project, as Novera "had no other customer projects" at that time.  Defendant also represented that Novera would complete the program by June 2020.  And true to its word, Novera delivered an operational "beta version" of the platform.

Around that same time, however, the relationship deteriorated.  It began when defendant suggested that significant (though unspecified) aspects of plaintiff's intellectual property "could be used for other projects envisioned by [defendant] for Novera."  Defendant proposed an agreement, but plaintiff rejected his overtures.  Defendant responded by "pressuring plaintiff to relinquish sole ownership" of the platform and the intellectual property.  Plaintiff again refused.  Plaintiff then "advised [defendant] that it would have [the platform] serviced by other developers and that the relationship between [p]laintiff, [defendant], and Novera was terminated."  Defendant acknowledged that "no more services would be performed."

---

[1] Unless otherwise noted, all quotations come from plaintiff's Amended Complaint.

A few days later, however, the server detected an intrusion.  Karl Camota, a Novera employee, had accessed the server that housed the platform, the code repository, the logins and passwords, and other unspecified "confidential information."  According to plaintiff, Camota "(i) copied [p]laintiff's IP; (ii) deleted part of [p]laintiff's IP; and (iii) rendered plaintiff's [platform] unusable."  Then, in a second act of sabotage, Camota "accessed the protected computers used by the web site's domain name registrar and web hosting service[] and disabled certain access to plaintiff's customer's website."  Plaintiff does not add further detail.

Still, plaintiff insists that defendant directed Camota's actions.  "These actions were not sanctioned by Novera," plaintiff continues, and they "were not undertaken within the scope of [defendant's] employment."  Again, plaintiff does not add further detail, besides noting that it "cannot license or sell [the platform]" and that "consumers cannot access or purchase cryptocurrency from [p]laintiff's customers and licensees."  Plaintiff allegedly suffered $500,000 in damages.  Of that sum, $50,000 went toward rebuilding the website and the server.

In the original complaint, plaintiff sued both defendant and Camota, bringing claims for civil liability under the CFAA and for conversion under state law.  I granted an initial motion to dismiss.  Plaintiff had not established that the Court had personal jurisdiction over Camota, and the allegations were simply too vague to give the defendants fair notice of the basis for the CFAA claim.  Plaintiff then filed the Amended Complaint, asserting claims against only defendant.  Another motion to dismiss is now before me.

## DISCUSSION

### I.     The CFAA Claim

The CFAA prohibits "[f]raud and related activity in connection with computers."  18 U.S.C. § 1030.  Though primarily a criminal statute, see § 1030(a)-(c), it also imposes civil liability if a violation involves one of five results: a $5,000 loss within a one-year period, the

modification or impairment of medical treatment, physical injury to any person, a threat to public

health or safety, or damage to certain government computers, see § 1030(g) (cross-referencing

§ 1030(c)(4)(A)(i)(I)-(V)).  Here, plaintiff alleges that it suffered a loss of more than $5,000.

Although plaintiff alleges several types of statutory violations, all require a $5,000 loss,

see id., and defendant has challenged only the allegations on that element.[2]  The CFAA defines

"loss" as follows:

> [T]he term "loss" means any reasonable cost to any victim, including the cost of
> responding to an offense, conducting a damage assessment, and restoring the data,
> program, system, or information to its condition prior to the offense, and any
> revenue lost, cost incurred, or other consequential damages incurred because of
> interruption of service.

18 U.S.C. § 1030(e)(11).  That loss "must relate to the victim's computer systems."  LivePerson,

Inc. v. 24/7 Customer, Inc., 83 F. Supp. 3d 501, 514 (S.D.N.Y. 2015).  That means "loss" does

not include damage to a plaintiff's goodwill with customers, lost revenue due to lost business

opportunities, or lost revenue due to unfair competition.  See Nexans Wires S.A. v. Sark-USA,

Inc., 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004), aff'd, 166 F. App'x 559 (2d Cir. 2006); Civic

Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd., 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005);

Register.com, Inc. v. Verio, Inc., 126 F. Supp. 2d 238, 248 (S.D.N.Y. 2000), aff'd, 356 F.3d 393

(2d Cir. 2004).

Still, by the plain terms of the statute, "loss" includes "the cost of responding to an

offense, conducting a damage assessment, and restoring the data, program, system, or

information to its condition prior to the offense."  18 U.S.C. § 1030(e)(11).  Plaintiff alleges just

that kind of loss.  The Amended Complaint states that, after defendant hacked into the server and

disabled plaintiff's website, plaintiff spent $50,000 bringing the website back to its original state.

---

[2] Specifically, plaintiff alleges that defendant violated 18 U.S.C. § 1030(a)(2)(C), (a)(4), (a)(5), and (a)(7).

Specifically, the Amended Complaint states, "It is estimated that the total cost to fix what [defendant] destroyed, and [to] bring [p]laintiff back to the point where it was before [defendant] committed the [p]rotected [s]erver [h]acking and [d]isabling of the [w]ebsite, will cost at least an additional $50,000." That allegation sufficiently alleges a loss under the CFAA.

In resisting this conclusion, defendant misreads the statute and misstates the pleading standard. Defendant first emphasizes that the $50,000 cost did not stem from an "interruption of service." But not all loss under the CFAA must result from an interruption of service. The statute divides "loss" into two categories: "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, _and_ any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis added). Because this language is disjunctive, the "interruption of service" requirement applies to only the second category of "loss," not the first. See Brown Jordan Int'l, Inc. v. Carmicle, 846 F.3d 1167, 1173 (11th Cir. 2017); Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC, 774 F.3d 1065, 1073 (6th Cir. 2014); Ticketmaster LLC v. Prestige Ent. W., Inc., 315 F. Supp. 3d 1147, 1172 (C.D. Cal. 2018). So a plaintiff "may allege losses related to costs incurred in responding to the violation, assessing its damage, and restoring data and systems to their condition prior to the alleged violation, without having suffered an interruption of services." Fla. Atl. Univ. Bd. of Trustees v. Parsont, 465 F. Supp. 3d 1279, 1295 (S.D. Fla. 2020) (quoting another source).[3]

---

[3] For this reason, the perceived inconsistencies between the Complaint and the Amended Complaint are beside the point.

Next, defendant contends that plaintiff has not alleged its loss with sufficient particularity.  Suggesting that the CFAA imposes some sort of heightened pleading standard, defendant cites several cases where courts "have dismissed CFAA claims for failing to sufficiently quantify damages."  Law Firm of Omar T. Mohammedi, LLC v. Comput. Assisted Prac. Elec. Mgmt. Sols., No. 17-cv-04567, 2019 WL 3288390, at *7 (S.D.N.Y. July 22, 2019) (collecting cases).  In these cases, however, the complaints were vague and conclusory – some only stated that the defendant's "wrongful conduct" had "harmed" the plaintiffs, LivePerson, 83 F. Supp. 3d at 514, while others merely alleged that the defendants "cause[d] damage by impairing the integrity or availability of data and information," Fink v. Time Warner Cable, No. 08-cv-9628, 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009).  Contrary to defendant's assumption, none of these cases suggest that the CFAA imposes a heightened pleading standard for damages.  Plus, this case is distinguishable because plaintiff has connected its expenses to a recognized form of loss under the CFAA, as plaintiff specifically alleged that it needed $50,000 to restore its server and website to their prior condition.  That allegation is enough to allege "loss" under the CFAA, even though it could have been clearer and likely constitutes the bare minimum needed to survive a motion to dismiss.[4]

---

[4] In contending that plaintiff has failed to state a claim under the CFAA, defendant makes two other arguments, but they are without merit.  First, defendant argues that the allegations fail to satisfy the plausibility standard from Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  This argument erroneously assumes that, to hold a corporate officer liable in tort, a plaintiff must allege with particularity that the officer had some sort of personal motive.  See Bano v. Union Carbide Corp., 273 F.3d 120, 133 (2d Cir. 2001) ("Under New York law, a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable."); Key Bank of N.Y. v. Grossi, 227 A.D.2d 841, 843, 642 N.Y.S.2d 403, 404 (3d Dep't 1996) ("Personal liability will be imposed . . . upon corporate officers who commit or participate in the commission of a tort, even if the commission or participation is for the corporation's benefit.").  Next, defendant vaguely suggests that he cannot be vicariously liable under the CFAA.  But courts in the Second Circuit generally agree that the CFAA supports vicarious liability, see PLC Trenching Co., LLC v. Newton, No. 6:11-cv-515, 2011 WL 13135603, at *7 & n.18 (N.D.N.Y. Dec. 6, 2011) (collecting cases), and, in any event, a principal is subject to direct liability where, as here, the agent acts with actual authority, Chabra v. Maplewood Partners, LP, No. 12-cv-1113, 2014 WL 652465, at *4 (E.D.N.Y. Feb. 19, 2014) (citing Restatement (Third) Of Agency § 7.03(1) (2006)).

I therefore hold that plaintiff has stated a claim under the CFAA.

## II.   Failure to Join a Party Under Rule 19

### A.   Legal Framework

Defendant also argues for dismissal under Rule 12(b)(7), which addresses "failure to join a party under Rule 19." That party is Novera. According to defendant, plaintiff "describes what is quintessentially a contractual dispute," so "it will be necessary for the Court to determine the respective rights and obligations of [p]laintiff and Novera" under that contract. Defendant also suggests that his own defenses will require some contract interpretation. The motion is somewhat thin on specifics, but at oral argument on the last motion, defendant insisted that his conduct was "fully consistent" with Novera's contractual rights and that plaintiff could not unilaterally terminate the contractual relationship. These issues require Novera to be joined as a party, defendant argues, yet Novera cannot be joined because, as a Canadian corporation, it is not subject to service of process. Defendant thus seeks dismissal for failure to join a party under Rule 19.

That rule requires a two-step inquiry. See, e.g., Associated Dry Goods Corp. v. Towers Fin. Corp., 920 F.2d 1121, 1123 (2d Cir. 1990). It first asks whether a person is a so-called "necessary party" that "must be joined" under Rule 19(a).[5] A party in "must be joined" in three situations:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

---

[5] Although the Federal Rules have abandoned the "necessary" and "indispensable" labels, see 7 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1604 (3d ed. 2021), many courts continue to use this terminology, see, e.g., Wash. Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 134 (2d Cir. 2020).

> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If such a person cannot be joined, the court proceeds to the second step.  See, e.g., Associated Dry Goods, 920 F.2d at 1124.  There, the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  The moving party bears the burden of "show[ing] the nature of the unprotected interests of the absent individuals and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence."  United States v. Sweeny, 418 F. Supp. 2d 492, 499 (S.D.N.Y. 2006) (alteration adopted) (quoting 5C C. Wright & A. Miller, Federal Practice & Procedure § 1359 (3d ed. 2005)).

**B.     Rule 19(a)(1)(A)**

At the first step, defendant has not shown that, in Novera's absence, "the court cannot accord complete relief among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Although defendant insists otherwise, this action is not one for breach of contract.  Plaintiff's only claims are tort claims, plaintiff seeks only damages, and plaintiff can collect the full amount of damages from defendant.

At most, Novera would be vicariously liable for defendant and Camota's actions.  Although an agent and principal "are not technically joint tortfeasors," courts "have nonetheless treated them as such" under Rule 19.  Rose v. Simms, No. 95-cv-1466, 1995 WL 702307, at *4 (S.D.N.Y. Nov. 29, 1995).  Thus, a plaintiff "may sue the agent or servant and principal or master in one suit, or may proceed against them in separate suits," id. (quoting another source), as it is well-established that a joint tortfeasor's absence is no barrier to according complete relief among the existing parties.  See Temple v. Synthes Corp., 498 U.S. 5, 7 (1990) (per curiam);

Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 360 (2d Cir. 2000); Haggar Int'l Corp. v. United Co. for Food Indus. Corp., No. 03-cv-5789, 2005 WL 8157060, at *13 (E.D.N.Y. March 16, 2005), report and recommendation adopted, 2005 WL 8157061 (E.D.N.Y. Apr. 4, 2005).[6]

### C.      Rule 19(a)(1)(B)(i)

Defendant has also failed to show that Novera "claims an interest relating to the subject of the action," such that disposing of the action without Novera would "as a practical matter impair or impede [Novera's] ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i). As this language suggests, the "threshold requirement" is that the absent party "claim an interest." Wash. Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126, 135 (2d Cir. 2020). The absent party need not intervene, see Fed. Ins. Co. v. SafeNet, Inc., 758 F. Supp. 2d 251, 259 (S.D.N.Y. 2010), but the moving party must present proof of the absent party's interests, such as "affidavits of persons having knowledge of these interests" or "other relevant extra-pleading evidence," Sweeny, 418 F. Supp. 2d 492 (quoting 5C C. Wright & A. Miller, Federal Practice & Procedure § 1359 (3d ed. 2005)). Here, defendant relies on "self-serving attempts to assert interests on behalf of [the absent party]." ConnTech Dev. Co. v. Univ. of Conn. Educ. Properties, Inc., 102 F.3d 677, 683 (2d Cir. 1996). Thus, defendant has merely alleged, but has not shown, that Novera claims an interest in the subject of this action, so defendant has failed to satisfy the threshold requirement of Rule 19(a)(1)(B)(i). See Peregrine Myan. Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996).

Even if Novera had claimed an interest, defendant also failed to show that disposing of the action would "impair or impede" that interest. Fed. R. Civ. P. 19(a)(1)(B)(i). This issue

---

[6] For these same reasons, defendant's argument that Camota is a necessary party is entirely without merit. Plaintiff alleges that Camota was acting as defendant's agent, and no one contends that Camota was a party to the contract.

concerns the general rule that an action can impair a non-party's interest when "resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract." Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 140 (2d Cir. 2002) (citing Peregrine Myan. Ltd., 89 F.3d at 48); see also Visión en Análisis y Estrategia, S.A. v. Andersen, 662 F. App'x 29, 32 (2d Cir. 2016) (summary order). That rule applies even if the plaintiff does not bring a breach of contract claim. See, e.g., Jonesfilm, 299 F.3d at 141 (addressing a trademark infringement claim). But the result very much depends on the facts of the case, see id., and "pragmatic considerations are controlling," Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth., 795 F.3d 351, 360 (2d Cir. 2015) (alteration adopted) (quoting 7 C. Wright & A. Miller, Federal Practice & Procedure § 1601 (3d ed. 2015)). If adjudication of the claims "would not settle any disputed material issues," the absent party need not be joined under Rule 19. See Jonesfilm, 299 F.3d at 141-42 (holding that disposing of a trademark action would not determine a non-party's rights under a contract, as the parties did not dispute the only material fact with respect to a potential breach of contract suit).

Here, disposing of plaintiff's claims *may* require a definition of Novera's rights under the contract, but defendant has not *shown* that this is so. Defendant has not even provided the contract.[7] Without that contract, it is impossible to tell whether defendant's alleged actions could be fully consistent with Novera's rights, whether plaintiff could unilaterally terminate the relationship, or whether the alleged actions would give rise to a claim for breach of contract. If these issues are irrelevant, if the facts are undisputed, or if the defenses are frivolous, Novera is not a necessary party. See id. Moreover, defendant has not even attempted to explain why a

---

[7] The omission is somewhat ironic, given that defendant scolds plaintiff for failing to attach the contract to the complaint, given "the obviously critical role that the purported [contract] will play in evaluating the merits of [p]laintiff's claims."

Canadian company's contractual rights would be affected by an American court's interpretation of that contract in a tort suit. Cf. MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 387 (2d Cir. 2006) (holding that "an action that could in the future impact a third party's rights under a separate contract" did not require joinder where the action did not seek to set aside that contract). Defendant has not met his burden at this stage.

Finally, even if Novera had an interest, and even if disposing of the action would impair that interest, Rule 19 would require joinder only if Novera's "ability to protect [its] interests would be impaired **because of** [its] absence from the litigation." Id. (emphasis in original). The corollary is that "prejudice to absent parties approaches the vanishing point . . . when the absent and remaining parties' interests are aligned in all respects." Am. Trucking Ass'n, 795 F.3d at 360 (quoting Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 134 (2d Cir. 2013)). Accordingly, "[c]ourts often conclude that the suit will not impair or impede an absentee's interests if the absentee's interests are adequately represented by an existing party." Fed. Ins. Co., 758 F. Supp. 2d at 258 (quoting another source).

Here, defendant will adequately represent Novera's interests. Defendant has every incentive to adopt the same legal and factual positions as would Novera – the greater Novera's rights under the contract, the lesser the chance of defendant's conduct being tortious. Given this alignment, defendant has not shown that Novera's ability to protect its interest would be impaired because of its absence from the litigation. See Sykes v. Hengel, 220 F.R.D. 593, 597 (S.D. Iowa 2004) (holding that a corporation's board members would adequately represent the absent corporation's interests in a CEO's defamation suit against the board, even though the CEO had sued the corporation in state court for breach of contract); Holland v. Fahnestock & Co., No. 01-cv-2462, 2002 WL 1774230, at *13 (S.D.N.Y. Aug. 1, 2002) (holding that the CEO

11

of an LLC was "more than capable of representing [the LLC's] interests" even though the action might have a preclusive effect on the LLC), <u>report and recommendation adopted</u>, 210 F.R.D. 487 (S.D.N.Y. 2002); <u>Rose</u>, 1995 WL 702307, at *6 (holding that a corporation's president would "more than adequately represent[]" the absent corporation's interests in a fraudulent inducement and breach of fiduciary duty action against the president).

**D.      Rule 19(a)(1)(B)(ii)**

Finally, defendant has not shown that Novera "claims an interest relating to the subject of the action," such that disposing of the action without Novera would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).  Defendant's argument on this front is not entirely clear.  He seems to suggest that, while he might avoid liability in this case, a future case could hold Novera liable for breach of contract, or vice versa.  Similarly, defendant suggests that this Court might interpret the contract one way, but another court might interpret it another way in a future suit against Novera.  But even if this case requires an interpretation of the contract, that interpretation would not *oblige* Novera to do anything.  Nor would a contract action against Novera impose any obligations on defendant.  So none of these situations involves "an existing party" – *i.e.*, defendant – incurring "double, multiple, or otherwise inconsistent obligations."  <u>See</u> Fed. R. Civ. P. 19(a)(1)(B)(ii).

Defendant also confuses inconsistent obligations (which trigger Rule 19) and inconsistent adjudications (which do not).  <u>See</u> <u>Sykes</u>, 220 F.R.D. at 598.  As the First Circuit explained:

> Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998) (citation omitted).  This case falls within that second category.  In addition, when the two suits would "involve different causes of action," a defendant is "not faced with the potential for double liability because separate suits have different consequences and different measures of damages."  Id.

In sum, all defendant has shown is the possibility of two different suits, with two different claims, against two different parties, offering two different forms of relief.  That situation does not trigger Rule 19(a)(1)(B)(ii).  See Sykes, 220 F.R.D. at 598; Rose, 1995 WL 702307, at *7.

**E.    Rule 19(b)**

When the moving party has not shown that an absent party must be joined under Rule 19(a), a court need not commence the Rule 19(b) inquiry of "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).  Moreover, even if defendant could show that Novera was a necessary party, I would still hold that the action could proceed under Rule 19(b).  See Marvel Characters, 726 F.3d at 134 (holding that a party's absence did not require dismissal under Rule 19(b) where the absent party "ha[d] his interests adequately represented by someone with the same interests who is a party").  I thus conclude that defendant has not met his burden of showing that Novera's absence requires dismissal of this suit.

**III.    *Forum Non Conveniens***

Next, defendant contends that this suit belongs in Canada under the doctrine of *forum non conveniens*.  "[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981).  In showing that a forum is so inconvenient that dismissal is warranted, a defendant "ordinarily bears a

heavy burden." Atl. Marine Const. Co. v. U.S. Dist. Ct., 571 U.S. 49, 66 n.8 (2013) (quoting another source).

The Second Circuit has developed a three-step inquiry for this doctrine. See Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001) (en banc). First, a court "determines the degree of deference properly accorded the plaintiff's choice of forum." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005). Second, the court "considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute." Id. And third, the court "balances the private and public interests implicated in the choice of forum." Id.

This case starts – and ends – at the second step. Courts "sometimes begin their . . . analysis" here, Norex Petroleum, 416 F.3d at 157, because "the inquiry ends" if "there is no adequate alternative forum," PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998). "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003).

Defendant fails to apply this framework, as his entire argument begins from a mistaken premise. According to defendant, Canada provides an adequate alternative forum because plaintiff could sue Novera there for breach of contract. But a defendant cannot secure dismissal on *forum non conveniens* grounds by pointing to "a different lawsuit in a different forum against a different defendant." Clanton v. Wyndham Destination, Inc., No. 3:19-cv-05685, 2019 WL 6828816, at *2 (W.D. Wash. Dec. 13, 2019). Rather, "a court must satisfy itself that the litigation may be conducted elsewhere against *all* defendants." PT United Can Co., 138 F.3d at

73 (emphasis added).  Defendant has not explained why he is subject to suit in Canada, nor has he consented to personal jurisdiction in Canada.  Therefore, his argument falls at the first hurdle.

Defendant has also failed to show that Canada permits litigation of the subject matter of the dispute.  True, this inquiry "'does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies."  Norex Petroleum, 416 F.3d at 158 (quoting PT United Can Co., 138 F.3d at 74).  And in all likelihood, Canada offers some form of redress for the harm that plaintiff allegedly suffered.  But what form of redress?  Defendant leaves us to wonder.  Defendant's argument consists of a single paragraph, and defendant has not submitted any *evidence* that plaintiff could pursue its claims in Canada.  See, e.g., In re Livent, Inc. Sec. Litig., 78 F. Supp. 2d 194, 210 (S.D.N.Y. 1999) (noting that the parties had submitted "the affidavits of several experts, including a leading member of the Ontario bar well-versed in securities litigation, a former Justice of the Canadian Supreme Court, and three professors of law at the University of Toronto").  If a defendant bears a "heavy burden" on a *forum non conveniens* motion, Atl. Marine, 571 U.S. at 66 n.8, it follows that a defendant cannot satisfy that burden by sending the Court on a wild goose chase through a foreign country's legal system.  Cf. Halo Creative & Design Ltd. v. Comptoir Des Indes Inc., 816 F.3d 1366, 1372 (Fed. Cir. 2016) (holding that Canada was not an adequate alternative forum where "[t]he only evidence appellees submitted to the district court was a printout of a webpage from the site of the Federal Court of Canada").

Therefore, defendant cannot secure dismissal on *forum non conveniens* grounds.

## IV.   The Conversion Claim

In his final argument, defendant contends that plaintiff's conversion claim is not cognizable under New York law.  To state a claim for conversion, plaintiff must allege that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had

ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Apple Mortg. Corp. v. Barenblatt, 162 F. Supp. 3d 270, 284 (S.D.N.Y. 2016) (quoting another source). The main question here is whether defendant converted "a specific identifiable thing" that would support a conversion claim under New York law.

For this element, courts once drew a line "between tangible and intangible property: Conversion was originally a remedy for the wrongful taking of another's lost goods, so it applied only to tangible property." Kremen v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2003) (addressing conversion generally). But "[v]irtually every jurisdiction . . . has discarded this rigid limitation to some degree." Id. That includes New York. In Thyroff v. Nationwide Mutual Insurance Co., 8 N.Y.3d 283, 292-93, 832 N.Y.S.2d 873, 879 (2007), the Court of Appeals recognized a conversion claim for "electronic records that were stored on a computer and were indistinguishable from printed documents." Yet the Court of Appeals did not – and still has not – answered the broader question: whether other forms of "electronic data, computer programs, or electronic data saved in computer programs can support a claim for conversion under New York law." Salonclick LLC v. SuperEgo Mgmt. LLC, No. 16-cv-2555, 2017 WL 239379, at *2 (S.D.N.Y. Jan. 18, 2017) (noting that the Second Circuit had certified this question in Thyroff).

Given the myriad of forms of electronic data, the line between actionable and unactionable property can be somewhat blurry. Indeed, courts have recognized conversion claims for various forms of electronically stored property, even though some of it lacked a tangible counterpart. See Kraus USA, Inc. v. Magarik, No. 17-cv-6541, 2020 WL 2415670, at *11 (S.D.N.Y. May 12, 2020) (trade secrets); Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170,

192 (S.D.N.Y. 2018) ("shares of stock existing only in electronic format"); Salonclick, 2017 WL 239379, at *4 (domain names and social media accounts); Apple Mortg., 162 F. Supp. 3d at 284 (email contact lists); Clark St. Wine & Spirits v. Emporos Sys. Corp., 754 F. Supp. 2d 474, 484 (E.D.N.Y. 2010) ("credit card information"); Spa World Corp. v. Lipschik, No. 09-cv-1711, 2010 WL 11632681, at *1, 7 (E.D.N.Y. Sept. 9, 2010) ("electronic proprietary information" such as "customer installer lists and sales leads").  For intellectual property, however, many courts still distinguish "between an electronic record of an intangible interest," which is actionable, and "the intangible interest itself," which is not actionable.  Arcadia Biosciences, Inc. v. Vilmorin & Cie, 356 F. Supp. 3d 379, 404 (S.D.N.Y. 2019) (first citing Harris v. Coleman, 863 F. Supp. 2d 336 (S.D.N.Y. 2012); then citing Grgurev v. Licul, 229 F. Supp. 3d 267 (S.D.N.Y. 2017)); see also Ferrarini v. Irgit, No. 19-cv-96, 2020 WL 122987, at *7 (S.D.N.Y. Jan. 9, 2020), appeal docketed, No. 21-597 (2d Cir. March 16, 2021).

Applying this fact-specific framework is difficult in any case, but it is impossible in this one given the lack of facts in the complaint.  The only relevant allegation is that defendant "(i) copied [p]laintiff's IP; (ii) deleted part of [p]laintiff's IP; and (iii) rendered plaintiff's [platform] unusable."  I noted that this allegation was too vague when I granted defendant's first motion to dismiss.  Yet the Amended Complaint adds no further detail, even though plaintiff surely knows what defendant copied, deleted, and rendered unusable.  It thus remains unclear whether the "IP" was a purely intangible interest in intellectual property, an electronic record of that intangible interest, or some other form of electronically stored information.  And without further clarity, plaintiff has not adequately alleged that defendant converted "a specific identifiable thing" that is actionable under New York law.  Cf. Hinterberger v. Cath. Health Sys., Inc., 284 F.R.D. 94, 111 (W.D.N.Y. 2012) (holding that a conversion claim was futile where the

plaintiff did not specifically identify the funds that were subject to conversion).  The conversion claim is therefore dismissed.[8]

### CONCLUSION

Defendant's motion to dismiss [19] is granted in part and denied in part.  The conversion claim is dismissed, but the CFAA claim may proceed.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
      August 17, 2021

---

[8] Arguably, the allegations supporting the conversion claim are no more vague than the allegations supporting the CFAA claims.  But the different outcomes stem from the different elements of each claim.  The conversion claim fails because it requires that "the property subject to conversion is a *specific identifiable thing*," <u>Apple Mortg.</u>, 162 F. Supp. 3d at 284 (emphasis added), while the CFAA claim survives because the statute imposes no such specificity requirement for "loss," and the allegations are just specific enough to connect the expenses to a recognized form of loss.